```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/6/09
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

Jeffrey Beal,

      Plaintiff,

                 09 Civ. 2985 (CM)

-against-

Himmel & Bernstein, LLP and
Andrew Himmel, Esq.,

      Defendants.
--------------------------------------------------------------x

DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT, AND DENYING PLAINTIFF'S CROSS-MOTION TO AMEND HIS
COMPLAINT

McMahon, J.

Background

  Jeffrey Beal and Robin Beal were married in New York in 1979. (Affidavit of Robin Beal, dated April 8, 2009, hereinafter "Robin Beal Aff." ¶ 2.) In 1986, Robin Beal commenced divorce proceedings in the Supreme Court of the State of New York, County of Nassau (the "Nassau County Court"). Robin Beal v. Jeffrey Beal, No.7237/86 (the "Divorce Proceeding"). (Id. ¶ 3.) In 1989, a judgment of divorce issued. (Id.) Thereafter, the divorce proceeding continued, and addressed collateral issues such as financial distribution, the appointment of a receiver, and an application to recover attorneys' fees. (Id.)

  On or about March 2, 1992, the Nassau County Court issued an order granting, *inter alia*, a judgment in favor of Robin Beal in the amount of $52,009 (the "Judgment"), a sum representing attorneys' fees and disbursements which were incurred in bringing

1

two motions in the Divorce Proceeding. (Robin Beal Aff. ¶ 4; Ex. A.) Thereafter, the Judgment was entered with the clerk of the Nassau County Court on March 24, 1992. (Robin Beal Aff. Ex. B.)

Jeffrey Beal appealed the imposition of the Judgment against him. (Defs. Rule 56.1 Stmt. ¶ 7.) By decision dated August 2, 1993, the Appellate Division, upheld the lower court's imposition of the attorney fee award, stating, "Given the demonstrated willful nature of [Jeffrey Beal's] failure to obey numerous court orders compelling payment of maintenance and support, the court properly directed him to pay counsel fees to the former wife's attorney (see, Domestic Relations Law § 237(c))." Beal v. Beal, 196 A.D.2d 471, 473 (2d Dep't 1993). The Second Department also noted that Jeffrey Beal waived his right to an evidentiary hearing to "challenge the value and extent of counsel's claimed services" because "he failed to object to the reasonableness of the fees in his opposition papers and did not request a hearing on the issue with specificity." Id.

From 1992 to the present, Jeffrey Beal failed to make any payment with respect to the Judgment. (Robin Beal Aff. ¶ 6.)

In October 2008, Robin Beal retained the law firm Himmel & Bernstein, LLP ("Himmel & Bernstein") to enforce the Judgment. (Declaration of Andrew Himmel, dated April 8, 2009, hereinafter the "Himmel Decl." ¶ 4.)

Following retention, Himmel & Bernstein engaged in, and continue to engage in, efforts to enforce the Judgment in supplementary proceedings in New York State Court, including serving restraining notices pursuant to N.Y. C.P.L.R. § 5222 and serving information subpoenas pursuant to N.Y. C.P.L.R. § 5224. (Id. ¶ 5.)

Plaintiff Jeffrey Beal maintains that he became aware of defendants' actions some time in March 2009 when he was notified by various third parties that they had received restraining notices and information subpoenas. (Affidavit of Jeffrey Beal, dated April 27, 2009, hereinafter "Jeffrey Beal Aff." ¶¶ 15-16.)

On or about March 27, 2009, plaintiff commenced this action by filing a purported class action complaint in this Court against Himmel & Bernstein and named partner, Andrew Himmel, Esq. Plaintiff alleges that defendants efforts to enforce the Judgment violate the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et. seq.*

Plaintiff has not taken any action in the New York State Court proceedings regarding the subpoenas or restraining notices. (Jeffrey Beal Aff. ¶ 12.)

On or about April 10, 2009, defendants Himmel & Bernstein and Andrew Himmel, proceeding *pro se*, moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff Jeffrey Beal opposed the motion and cross-moved to amend his class action complaint to include additional alleged violations of the FDCPA that plaintiff learned of after the filing of his original complaint.

For the reasons stated below, defendants' motion for summary judgment is granted, and plaintiff's cross-motion to amend his complaint is denied.

### *DISCUSSION*

**I.       Standard**

A party is entitled to summary judgment when there is no "genuine issue of material fact" and the undisputed facts warrant judgment for the moving party as a matter of law. Fed. R. Civ. P. 56 (c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). In

3

addressing a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in [its] favor." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Whether any disputed issue of fact exists is for the court to determine. Balderman v. United States Veterans Admin., 870 F. 2d 57, 60 (2d Cir. 1989). The moving party has the initial burden of demonstrating the absence of a disputed issue of material fact. Celotex v. Catrett, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The party opposing summary judgment "may not rely on conclusory allegations or unsubstantiated speculation." Scotto v. Almenas, 143 F. 3d 105, 114 (2d Cir. 1998).

Moreover, not every disputed factual issue is material in light of the substantive law that governs the case. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude summary judgment." Anderson, 477 U.S. at 248. Finally, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita., 475 U.S. at 586. To withstand a summary judgment motion, sufficient evidence must exist upon which a reasonable jury could return a verdict for the nonmovant.

## II. The Judgment Against Jeffrey Beal is not a Consumer Debt within the Meaning of the FDCPA

Plaintiff's theory of recovery is that defendants violated the FDCPA while seeking to enforce the Judgment against plaintiff by failing to comply with Article 52 of New York Civil Practice Law and Rules.

The threshold inquiry is whether plaintiff can bring this claim under the FDCPA.

4

The FDCPA seeks to eliminate abusive debt collection practices, including conduct by the debt collector meant to "harass, oppress, or abuse any person in connection with the collection of a debt," 15 U.S.C. § 1692d, and the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

Consequently, the first question in any claim brought under the FDCPA is whether the allegedly violative conduct was used in an attempt to collect a "debt" within the meaning of the FDCPA. See, e.g., Mabe v. G.C. Servs. Ltd. P'ship., 32 F.3d 86, 87-88 (4th Cir. 1994).

The FDCPA defines "debt" as

> The term "debt" means any obligation or alleged obligation of a *consumer* to pay money arising out of a *transaction* in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.

15 U.S.C. § 1692a(5) (emphasis added).

The statute does not define transaction. However, the case law analyzing claims under the FDCPA hold that "at a minimum, the statute contemplates that the debt has arisen as a result of the rendition of a service or purchase of property or other item of value." Beggs v. Rossi 145 F.3d 511, 512 (2d Cir. 1998) (quoting Staub v. Harris, 626 F.2d 275, 278 (3d Cir. 1980). See also Turner v. Cook, 362 F.3d 1219, 1227 (9th Cir. 2004)("The Act does not define 'transaction,' but the consensus judicial interpretation is reflected in the Seventh Circuit's ruling that the statute is limited in its reach 'to those obligations to pay arising from consensual transactions, where parties negotiate or contract for

5

consumer-related goods or services.'")(quoting Bass v. Stolper, Koritzinsky, Brewster & Neider, S.C., 111 F.3d 1322, 1326 (7th Cir. 1997)).

In the instant case, plaintiff's debt to his ex-wife—the debt that defendants seek to enforce against him—was not incurred by plaintiff as a consumer to receive goods or services. Instead, the debt is an obligation imposed upon him by the courts to pay the legal fees of his ex-wife incurred by her in their post-divorce litigation. That debt is not the "result of the rendition of a service or purchase of property or other item of value." Staub, 626 F.2d at 278. It was in the nature of a judicially-ordered sanction for plaintiff's "willful" failure "to obey numerous court orders." As such the FDCPA is not applicable to plaintiff's claim.

Other courts have rejected arguments that debts arising out of court-ordered obligations implicate the FDCPA. For example, in Vaile v. Willick, No-07-00011, 2007 WL 204477, at *1 (W.D. Va. Jan. 24, 2008), defendants, representing plaintiff's ex-wife, sent letters to various third parties informing them of various allegations, including tort allegations, against plaintiff. Plaintiff argued that these communications violated the FDCPA because they were an orchestrated attempt to recover court-ordered attorneys' fees owed by plaintiff to his ex-wife. Id. at *5. The court disagreed, saying, "Any debt owed by Plaintiff to Defendants, whether the result of a court order or by the commission of a tort, would not implicate the FDCPA because it does not arise from a consumer transaction." Id. at *6.

Courts have also refused claims that court-ordered child support payments are debts within the meaning of the FDCPA. Child support obligations "do not qualify as 'debts' under the FDCPA because they were not incurred to receive consumer goods or

services. Rather, the [Department of Social Services] imposed these obligations upon appellants to force them to fulfill their parental duty to support their children." Mabe, 32 F.3d at 88; see also Adymy v. Erie Cty. Child Support Enforcement Unit, No-03-0955, 2006 WL 1174322, at * 3 (W.D.N.Y. May 2, 2006).

No doubt aware of the authority and logic contrary to his position, plaintiff attempts to avoid the obvious result by convoluting the question. He argues that the fees owed by plaintiff's ex-wife to her attorney are a consumer debt under the FDCPA because they were incurred in exchange for her attorney's services. Bootstrapping, he contends that his own court-ordered obligation to pay those attorneys' fees must also be a consumer debt within the meaning of the FDCPA.

Plaintiff completely misconstrues the issue. The character of plaintiff's ex-wife's obligation to her attorney matters not. The only question of relevance is the character of the obligation owed by plaintiff. His obligation is not a consumer debt within the meaning of the FDCPA because it did not arise out of any consumer transaction in which he engaged.

For this reason, defendants' motion for summary judgment is granted. Plaintiff can take up his allegations of violations of Article 52 of the CPLR in the New York State Court proceeding.

Plaintiff's complaint is dismissed in its entirety.

### III.     Plaintiff's Cross-Motion to Amend his Complaint is Denied

Plaintiff seeks leave to amend his class action complaint pursuant to Federal Rule of Civil Procedure 15(a) to add additional purported violations of the FDCPA committed after the filing of the initial complaint. (Jeffrey Beal Aff. ¶ 31.) Since the obligation at-

7

issue is not a debt within the meaning of the FDCPA, plaintiff's complaint, with or without the additional allegations, fails to state a claim for relief under FDCPA. Accordingly, plaintiff's cross-motion to amend his complaint is denied as futile.

## *CONCLUSION*

The docket clerk is directed to terminate defendants' motion for summary judgment (Dkt. # 7) and plaintiff's cross motion to amend his complaint (Dkt. #13) and to close the case.

The conference scheduled for May 8, 2009 at 11:00 a.m. in this matter is **cancelled**.

This constitutes the decision and order of the Court.

Dated: May 6, 2009

_____
U.S.D.J.